**Will Allen SMITH, Petitioner-Appellant,**

v.

**STATE OF MISSISSIPPI, Respondent-Appellee.**

**No. 72–1325.**

United States Court of Appeals, Fifth Circuit.

May 7, 1973.

**SIMPSON, Circuit Judge:**

Presented by the appeal in this federal habeas corpus action is the single question whether petitioner Will Allen Smith is wrongfully incarcerated in the Mississippi State Penitentiary under the U. S. Constitution's Fourteenth Amendment due process clause by reason of violation of the Fifth Amendment's proscription against double jeopardy. The question arises because a mistrial was declared at Smith's first state court trial by reason of a trial juror's comment to a bailiff regarding a central issue of the defense prior to the receipt of any evidence.

We hold that no Fifth Amendment double jeopardy rights of Smith were violated, and accordingly affirm.

I

On July 19, 1965, the petitioner, Will Allen Smith, was brought to trial in the Circuit Court of Warren County, Mississippi under an indictment for murder. Jury selection was not finished at the end of the first day of the trial. Since Smith's primary defense was to be insanity the prospective jurors were questioned individually regarding their knowledge of the case and their views of that defense. Twelve jurors were seated and accepted by the court but not sworn when it adjourned for the night to reconvene the next day for the selection of an alternate juror. Under proper instruction of the trial judge, and in the charge of two bailiffs, the provisional jury was sequestered for the evening.

On the following morning one of the two bailiffs and one of the selected jurors were in the bathroom of the courthouse shaving prior to reporting to court. They had been acquainted for several years. The juror, John L. McKnight, told the bailiff, A. H. Koerper, in the form of a "passing comment", that from observing the defendant in the courtroom during the selection of

John W. Prewitt, Vicksburg, Miss., court-appointed, for petitioner-appellant.

A. F. Summer, Atty. Gen. of Miss., John M. Kinard, Sp. Asst. Atty. Gen., Timmie Hancock, Asst. Atty. Gen., Jackson, Miss., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

the jury the previous day he was of the opinion that "the poor man was crazy" and "didn't know what he was doing." [1]

When Koerper saw one of the state's prosecutors upon the latter's arrival at the courthouse that morning, he told him of the bathroom incident with McKnight. Koerper made no disclosure as to the juror's statement to either the judge or defense counsel, despite a specific inquiry to him by defense counsel as to the jury's well-being.

Court was opened, the alternate juror was selected and the whole panel of twelve jurors and one alternate juror was sworn. Immediately thereafter and before any evidence was introduced, the state prosecutor moved for a mistrial stating his belief that the statement of juror McKnight to bailiff Koerper indicated that McKnight held an opinion which would preclude the state from receiving a fair trial.

The trial judge excused all of the jurors except juror McKnight from the courtroom and heard argument as to the state's motion.[2] At the hearing both Koerper and McKnight testified. They were in agreement that juror McKnight did not express any prejudgment as to the defendant's guilt or innocence during the bathroom conversation.[3] Mc-

---

1. This incident is related in the text recounted by the bailiff Koerper. It was solely on the basis of his testimony that the trial judge declared the mistrial. See text, infra. Juror McKnight testified that bailiff Koerper:

> . . . started the conversation . . . and was telling me about the eccentricity of the defendant, about him eating only meals that were a day old, you know, cooked today and eaten tomorrow, and how he—when he first came into the jail how he tried to bribe the deputy to get his belt to be hung. And that brought on my conversation and answer to these statements by the bailiff. Now I will assure you I haven't prejudged the case, but as per the instructions of the District Attorney I have observed the defendant for future use in my deliberations about the matter. But I have a free mind and I have no fixed opinion about this matter. I'm waiting for testimony from this box.

BY THE COURT: Did you make the statement to the bailiff that he just made that he was crazy and that—

A. I didn't think I said crazy. I said I didn't think that a man on trial for his life would show the non-interest, Judge, that my observation of the defendant led me to believe.

*　　*　　*　　*　　*

I don't believe I said crazy. I don't recall that.

*　　*　　*　　*　　*

I just told him that I didn't think that the defendant had shown a lot of intelligence in the proceedings, in his following the proceedings, his, you might say, interest. That's roughly what I said. And that's all I said.

When recalled to the stand, bailiff Koerper denied having initiated the conversation with juror McKnight.

2. The trial transcript indicated that before the bailiff and juror were questioned the state made an in-chambers motion to disqualify and dismiss juror McKnight. Defense counsel responded by urging the court, based upon his understanding of what the testimony would be, to declare a mistrial in the event the court should rule in the state's favor and dismiss juror McKnight.

The trial judge at this time neither ruled on the defense motion nor expressly reserved the right to do so. Neither brief discusses the failure to rule. Nor was it considered by the federal habeas court. We accordingly treat defense counsel's motion for mistrial as defunct. We also disregard failure of the record to show absence of a defense objection to granting the state's motion for mistrial. Neither the briefs of the parties nor the district court made an issue of this point. On the contrary it is repeatedly asserted without denial that the motion was granted over defense counsel's objection. We think it probable that the objection was voiced out of the hearing of the court reporter, when the court suggested a brief conference in chambers with counsel immediately after presentation of the state's motion for mistrial. The record indicates that a brief conference occurred at that time.

We have noted these inconsistencies upon our inspection of the record, but think that the agreement of the briefs disposes of them without the need for further consideration by us.

3. "BY DEFENSE COUNSEL: I'll ask you this, would you state whether or

Knight assured the trial judge that he had no prejudgment or fixed opinion as to the matter.[4] The trial judge granted the state's motion and declared a mistrial for reasons not articulated with precision. The judge appeared to treat juror McKnight's statement to Koerper as an expression of his opinion of the defendant's guilt or innocence, and to feel that since the juror had stated an opinion prior to final deliberation and without hearing testimony, the totality of these circumstances would militate against the state receiving a fair and impartial trial.[5]

Since these events took place near the end of the July term of court the case was continued to the next, the December term of the court. The petitioner was remanded to the county jail without bond to await trial.

When the December, 1965 term opened petitioner contended by plea in bar that he was being denied due process of law and being placed in jeopardy twice for the same offense in violation of his state and federal constitutional rights. The plea in bar was overruled after argument and Smith was then tried on the original indictment. The jury found him guilty of murder as charged with a recommendation of mercy and he was sentenced to imprisonment for life. On appeal the Mississippi Supreme Court affirmed the trial court as to the double jeopardy issue, but reversed the case on other grounds and remanded for a new trial. Smith v. State, 198 So.2d 220 (Miss.1967)

Smith was again in July, 1967 tried before a jury on the same charge, again found guilty and again sentenced to life imprisonment. On appeal the Mississippi Supreme Court again reversed the conviction on grounds other than the double jeopardy issue and again ordered a new trial. Smith v. State, 220 So.2d 313 (Miss.1969).

In March, 1970, petitioner was brought to trial for the fourth time, was again found guilty by a jury and again sentenced to a term of life imprison-

---

not Mr. McKnight made any statement as to his prejudging the case, had any opinion whether the man was guilty or innocent?
BAILIFF Koerper: He did not."
And see fn. 4, infra.

4. "JUROR McKnight: . . . Now I will assure you I haven't prejudged the case . . . I have a free mind and I have no fixed opinion about this matter. I'm waiting for testimony from this box.
\* \* \* \* \*
BY THE STATE: Did you go into the question of whether or not he was able to distinguish right from wrong?
JUROR: I did not.
\* \* \* \* \*
BY THE STATE: Well, weren't you prejudging the case, then and there, before you heard a word of testimony?
JUROR: No, I was not. I was doing what you asked me to do, observe the man."
\* \* \* \* \*

5. "BY THE COURT:
And as harmless as the juror, Mr. McKnight, thinks his actions are in the premises, yet the expression of an opinion by a juror as to either guilt or innocence . . . A juror has no right to express an opinion and to go into the trial of a case without hearing a witness having made any such expression. And, of course, I realize people are prone to chat and to talk, but its quite important in a criminal case, particularly in a capital case, that a juror refrain from any expression until it is time to go into a final deliberation. So I think on the basis of what transpired in this case, I think possibly the motion for mistrial ought to be granted and that this matter be terminated at this time in a mistrial and reset for trial. . . .
. . . it is an expression of opinion here prior to hearing any testimony, which, I think, would be quite prejudicial to the State of Mississippi in the presentation of the case.
\* \* \* \* \*
. . . I think under the law, the law which requires that the jury not have made any expression as to guilt or innocence, either one, of a defendant in the trial of a lawsuit, I think that its just going to require that we have the mistrial in the case. And that's without any particular criticism about it, but I think that it is going to have to be the requirement."

ment. On appeal the Mississippi Supreme Court affirmed the trial court and directed that Smith begin serving his sentence. Smith v. State, 245 So.2d 583 (Miss.1971). Petition for rehearing was denied by the Mississippi Supreme Court, as was a petition for leave to file a petition in the trial court for Writ of Error Coram Nobis. State remedies were exhausted at this point, as we explicate infra, Note 6.

Smith then applied to the court below for habeas corpus relief asserting denial by Mississippi courts of his federally guaranteed constitutional rights. The application was denied after hearing. From that denial the petitioner brought the instant appeal.

## II

Petitioner contends there was no "manifest necessity" for the trial judge to declare a mistrial in the July 1965 proceedings and further that the ends of public justice would not have been otherwise defeated had he not so ruled. He asserts that absent such considerations the trial court erred in declaring a mis-

trial; jeopardy had attached; and that the subsequent trials were each in violation of his rights under the Fifth Amendment to the U. S. Constitution.

Mississippi counters that petitioner was not "put to trial" and did not otherwise suffer public humility by virtue of his presence in the courtroom pursuant to the aborted trial; that he was in no way prejudiced by the dismissal of the proceedings before testimony was presented; that in any event the trial judge acted within his discretion in declaring a mistrial when he concluded the state would not receive a fair and impartial trial because the juror McKnight had expressed an opinion as to the primary issue of the case prior to the reception of any testimony or evidence; and that jeopardy had not attached because there was no abuse of discretion by the trial judge in his effort to ensure a fair trial "designed to end in just judgment". Accordingly, says the respondent, the district court's denial of petitioner's application for writ of habeas corpus was correct and is due to be affirmed.[6]

---

6. As an alternative ground below, the respondent state contended and the district court held that as a matter of law a federal district court lacked jurisdiction to entertain Smith's petition for writ of habeas corpus because petitioner failed to exhaust available state remedies in that he did not apply to the Governor of Mississippi for executive clemency and did not petition the United States Supreme Court for a writ of certiorari to consider the Mississippi Supreme Court's rejection of his Fifth Amendment claim. From the closing portion of respondent's brief it appears that this argument has not been abandoned: "Appellant has yet to exhaust his available state remedies and cannot seek Federal Court relief until having done so." Respondent's brief, page 15.

This is puzzling in view of the following stipulation filed with the district court on December 10, 1971, ten days before it rendered its decision, and signed by both parties:

. . . Petitioner herein, Will Allen Smith, has fully pursued and exhausted all State and administrative remedies that are available and open to him under the laws of the State of Mississippi.

. . . the Petition for Writ of Habeas Corpus filed before the United States District Court for the Southern District of Mississippi, Western Division by Petitioner was the sole and only remedy at this time available to him in this cause.

Although federal jurisdiction may not be conferred by stipulation of the parties, several observations are in order.

We consider it settled, first of all, that failure to apply to the United States Supreme Court for a writ of certiorari to the Mississippi Supreme Court's affirmance as to the double jeopardy issue is not a bar to federal habeas relief. Fay v. Noia, 1963, 372 U.S. 391, 435–438, 83 S.Ct. 822, 847–848, 9 L.Ed.2d 837, 867–868; Pleas v. Wainwright, 5 Cir. 1971, 441 F.2d 56, 57; Makarewicz v. Scafati, 1 Cir. 1971, 438 F.2d 474, 477, cert. denied, 402 U.S. 980, 91 S.Ct. 1685, 29 L.Ed.2d 145; Hedberg v. Pitchess, 9 Cir. 1966, 362 F.2d 511; Whippler v. Balkcom, 5 Cir. 1965, 342 F.2d 388, 390.

Fay v. Noia, supra, also held that the exhaustion of remedies doctrine is a rule of comity only and not a jurisdictional requirement as it merely "relates to the

## III

The respondent's contention that petitioner was not "put to trial" or was in no way prejudiced by the dismissal of the proceedings before testimony was presented has been decided adversely to it by the Supreme Court in Downum v. United States, 1963, 372 U.S. 734, 83 S. Ct. 1033, 10 L.Ed.2d 100, and recently reaffirmed in Illinois v. Somerville, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L. Ed.2d 425. In both cases the Supreme Court held that jeopardy attached when the first jury was selected and sworn. The mere introduction of evidence has no spontaneous effect on a defendant which can be said to automatically charge him with an appreciable degree of insecurity once he has made the preparations for trial and selected those of his peers who will determine his fate.

But the conclusion that jeopardy attached once the jury was selected and sworn simply begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial. It is that examination in the context of this case with which we proceed.

## IV

Unquestionably society has strong interests in ensuring that its criminal laws are vigorously enforced so as to prevent the guilty from going free, and further, under a system of justice under law that both sides to a criminal prosecution in fact receive the fair trial to which each is entitled. There are equally important countervailing considerations that an accused be not harassed by a series of aborted criminal proceedings which necessarily entail financial, physical and psychological burdens of enormous dimensions and which give rise to danger that with enough opportunities the prosecution will convict the innocent. It is further necessary to prevent an unscrupulous prosecution from avoiding an unwanted judge or jury or the consequences of damaging testimony by precipitating a mistrial. Recognition of these competing interests prompted the Fifth Amendment's proscription that no person be subject for the same offense to be twice put in jeopardy of life or limb. This "fundamental ideal in our constitutional heritage" is fully applicable to the states through the Fourteenth Amendment and is to be applied retrospectively. Benton v. Maryland, 1969, 395 U.S. 784, 794–796, 89 S.Ct. 2056, 2062–2063, 23 L.Ed.2d 707, 715–717; North Carolina v. Pearce, 1969, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. See also Ashe v. Swenson, 1970, 397 U.S. 436, 437 n. 1, 90 S.Ct. 1189, 1191, 25 L. Ed.2d 469, 472.

We turn to the relevant case law to examine how the Court has implemented these policies.

Early in its development of constitutional standards, the Supreme Court was asked to formulate rules based on categories of circumstances which would permit or preclude retrial and thus provide a clear line with which to mark the limits of the conflicting policies behind the Fifth Amendment. The Court, in a passage by Mr. Justice Story which has become the touchstone for determining when reprosecution may follow an aborted trial, expressly declined to set forth

---

appropriate exercise of power." 372 U.S. at 420, 83 S.Ct. at 839, 9 L.Ed.2d at 858.

Further, under the teachings of Brown v. Allen, 1953, 344 U.S. 443, 447–450, 73 S.Ct. 397, 402–404, 97 L.Ed. 469, 484–485, state remedies were exhausted when the federal constitutional questions were decided adversely to petitioner on direct appeal, without any necessity for pursuing any collateral or post-conviction remedy. Cf. Wilwording v. Swenson, 1971, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418.

Finally, any failure to seek executive clemency or pardon, clearly an act of grace, from the governor of Mississippi has not the slightest relation to questions involving the assertion of constitutionally guaranteed rights. The single case noted in this connection by the district judge, Shaver v. Ellis, Mgr., 5 Cir. 1958, 255 F.2d 509, held only—in connection with affirming the denial of last minute habeas relief to a prisoner under death sentence —that the Texas executive clemency procedures met due process requirements.

the requested guidelines. But in doing so the Court articulated some broad principles for the resolution of future problems:

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."

United States v. Perez, 1824, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165.

This formulation has been consistently adhered to by the Supreme Court in subsequent decisions and, as Mr. Justice Rehnquist noted in the Court's latest discussion of this aspect of the Fifth Amendment,

> " . . . abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." Illinois v. Somerville, supra.

■ Concentration, then, has focused on the propriety of the trial judge's exercise of his discretion, taking into account all circumstances relevant to the particular trial involved, to determine whether the declaration of a mistrial was required by "manifest necessity" or by the "ends of public justice."

While meaningful categories of circumstances have been consistently difficult to distinguish and apply, Wade v. Hunter, 1949, 336 U.S. 684, 690–691, 69 S.Ct. 834, 838, 93 L.Ed. 974, 978–979, one line of cases emerges where the declaration of a mistrial was based on a rule or a defective procedure lending itself to prosecutorial manipulation. In Downum v. United States, supra, the prosecution asked that the jury be discharged because its key witness was not present although it had earlier indicated readiness to proceed to trial and had allowed the jury to be selected and sworn. The trial judge granted the request even though the absent witness was essential for only two of the six counts against defendant and denied the defendant's motion, opposed by the prosecution, to dismiss those two counts and proceed to trial on the other four. The prosecution had allowed the jury to be impaneled knowing that its witness had not been served with a subpoena and could not be found, thus knowingly lacking sufficient evidence to go to the jury on the two counts. The Supreme Court reversed the second conviction because the dismissal of the first jury was not manifestly necessary to proceed with the prosecution once the jury had been impaneled, and because the mistrial was grounded on bad-faith prosecutorial conduct aimed at obtaining another day in court when it might produce sufficient evidence to convict.

Considerably closer to the case before us is a line of cases involving the proper exercise of the trial judge's discretion to declare a mistrial when it becomes obvious that an impartial verdict cannot be reached, or when, although a verdict might be reached, a conviction would require reversal on appeal due to an obvious procedural error in the trial. Illinois v. Somerville, supra, (represcution on substitute indictment held not barred when trial aborted because a defect was found to exist in the indictment that

was, as a matter of state law, not curable by amendment); Lovato v. New Mexico, 1916, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (reprosecution held not barred when jury discharged after prosecution realized defendant had not been re-arraigned after his demurrer to indictment was overruled); and Thompson v. United States, 1894, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (reprosecution held not barred when mistrial declared upon the trial judge's learning after one government witness had testified that one of the jurors was disqualified, because he was a member of the grand jury that indicted the defendant and defendant's counsel moved for discharge of the jury) are examples of this line of authority.

In United States v. Jorn, 1971, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, the first of the government's witnesses at a criminal tax fraud trial was warned of his constitutional rights by the trial judge at the suggestion of the government before being questioned. He was called to testify to the submission of false income tax returns prepared by the defendant in the defendant's trial for willfully assisting in the preparation of those fraudulent returns. Pursuant to his premonishing the witness of his rights, the trial judge formed a belief that none of the government's witnesses had been adequately forewarned that they might themselves incur criminal liability by their testimony. The judge, *sua sponte*, discharged the jury and declared a mistrial to give witnesses the opportunity to consult with their attorneys. The Supreme Court concluded that the trial judge abused his discretion in aborting the trial because he completely failed to consider the possibility of less extreme methods to cure the defect, for example, the granting of a continuance to allow the witnesses to consult with counsel, and at the same time, to protect the defendant's interest of being able, once and for all,

"to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." 400 U.S. at 486, 91 S.Ct. at 558.

Defendant's right to have his case decided by that jury should not have been denied him by the trial judge's total abdication of his responsibility to exercise sound discretion in abruptly ordering the mistrial without consideration of the countervailing interests involved. Such arbitrary action could not support a finding of the "manifest necessity" required under *Jorn*, supra. 400 U.S. at 486-487, 91 S.Ct. 547.

Gori v. United States, 1961, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, also involved a trial judge's *sua sponte* declaration of a mistrial. There the trial judge withdrew a juror and declared a mistrial during the direct examination of the fourth witness for the government. The Second Circuit Court of Appeals, *en banc*, branded such action as "overassiduous" and criticized it as premature, United States v. Gori, 2 Cir. 1960, 282 F.2d 43, 46, and the Supreme Court indicated it was not clear what reasons caused the trial judge to take such action. Still, the Supreme Court agreed with the Court of Appeals' affirmance of the conviction at a later trial in recognition of the extremely wide range of discretion allowed to the trial judge in determining whether a mistrial is appropriate—

"a responsibility which 'is particularly acute in the avoidance of prejudice arising from nuances in the heated atmosphere of trial, which cannot be fully depicted in the cold record on appeal . . . ."

367 U.S. at 366, 81 S.Ct. at 1525, 6 L.Ed.2d at 903. Neither the Second Circuit nor the Supreme Court was willing to reject the rule of discretion in the trial judge to declare a mistrial. 367 U.S. at 368, 81 S.Ct. at 1526, 6 L.Ed.2d at 904; 282 F.2d at 47. See also Brock v. North Carolina, 1953, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456; Lovato v. New Mexico, supra.

We think that the facts of the instant case bring it under *Gori*, rather than un-

der *Jorn*. The Court below made no finding of prosecutorial misconduct or manipulation. Such a finding would not have been justified on this record so that this case does not fit the line of cases exemplified by *Downum*, supra.

## V

 We recognize that the petitioner was deprived of the opportunity to have his fate determined by the jury first impaneled. *Jorn*, supra. This is significant in the context of this case, keeping in mind the nature of the defense and the apparent predisposition of juror McKnight to conclude that the defendant was, or at least appeared to be, "crazy". The determination by the trial judge to abort the proceeding was not one to be lightly undertaken. Illinois v. Somerville, supra.

Immediately upon being informed of the conversation between one of the selected jurors and the court's bailiff regarding an aspect of the case, the trial judge made every effort to ascertain what exactly had transpired in the bathroom of the courthouse that morning. Proceedings were held in chambers to explore the possible prejudicial effects the encounter might have on the trial. This inquisition proved not to be fully satisfactory, whereupon the trial judge separated juror McKnight from the remainder of the jury in order more fully to determine what had transpired. The decision to declare the mistrial was based upon the trial judge's conclusion that juror McKnight had prematurely formed and held an opinion about an important element in the case without the prosecution having an opportunity to submit its evidence and further in the belief that the separation of the jury might cause other jurors to become overly concerned over the purpose of the brief interruption and separation of juror McKnight, thus raising questions in their minds wholly irrelevant to the merits of the case and, perhaps, inimical to the ends of justice.

The care with which the state trial judge attempted to learn and to weigh properly the full import of what had transpired distinguishes this case from *Jorn*, supra, where no such inquiry was undertaken. The trial judge made a sincere effort to determine whether "the ends of public justice," *Perez*, supra, would be better obtained by declaring a mistrial and beginning anew. He was sensitive to the opposing requirements on his discretion. It is of no particular concern, whether we would or would not have reached a different result as a trial court. What is of controlling importance is that the state trial judge first painstakingly weighed all the factors present and thereupon exercised the discretion invested in him. His declaration of a mistrial was not unreasonable. The subsequent retrials did not violate Smith's Fifth Amendment Due Process and Double Jeopardy rights as applied to the State of Mississippi through the Fourteenth Amendment.

Affirmed.