**UNITED STATES of America ex rel. Frederick Charles STEWART, Appellant,**

v.

**Lowell D. HEWITT, Warden.**

**No. 74–2140.**

United States Court of Appeals, Third Circuit.

Argued April 14, 1975.

Decided June 10, 1975.

---

Norman M. Yoffe, Harrisburg, Pa., for appellant.

LeRoy S. Zimmerman, Dist. Atty., Marion E. MacIntyre, Deputy Dist. Atty., Richard A. Lewis, Harrisburg, Pa., for appellee.

Before SEITZ, Chief Judge, and RO-SENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This case is before us on appeal from the district court's denial of a petition for habeas corpus relief based on the Double Jeopardy provision of the 5th Amendment.

On March 18, 1961, appellant (hereafter "defendant") was convicted in the Pennsylvania Court of Common Pleas of the murder of his wife. In state post conviction proceedings, the Pennsylvania Supreme Court, on October 4, 1972, reversed defendant's 1961 conviction and ordered a new trial. The court based its decision on the ground that the trial court had erred in 1961 when it denied defendant's motion for withdrawal of a juror even though apprised of the fact that defendant's father-in-law was on the panel of jurors from which the jury that subsequently convicted defendant was selected.

On April 9, 1973, defendant's case was again called for trial. After the jury had been selected and impanelled, the trial judge was informed by the prosecutor that defendant's father-in-law was employed as a tipstaff during the current term of the Court of Common Pleas. As a tipstaff, it was his sworn duty to attend to the needs of and to care for the panel of jurors serving during the term. Defendant's trial had been set for the first day of the second week of the court's term. The Common Pleas judge noted that defendant's father-in-law had consequently been "exercising . . . his sworn duty of attending to the needs and care and so forth of the panel of jurors," for over a week.

The court reconvened shortly after the judge was apprised of this information, and defendant and his counsel were informed of this turn of events. At that time, the judge asked defendant's counsel whether he had any motions to make. After consultation with his client, defense counsel indicated that defendant did not desire to make any motions, and, upon being asked whether he wished to proceed with the trial, defendant responded in the affirmative. Thereupon the judge declared a mistrial *sua sponte*. The question on this appeal is whether the trial judge acted within his discretion in declaring a mistrial.

 Preliminarily, we are satisfied that defendant met his burden of exhaustion of state remedies before presenting his double jeopardy claim by way of a petition for a writ of habeas corpus in the federal court. *See United States ex rel. Keith Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir., 1975); *United States ex rel. Russo v. Superior Court of New Jersey*, 483 F.2d 7 (3d Cir. 1973), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). On April 12, 1973, defendant filed a petition for a writ of habeas corpus raising the double jeopardy issue with the state trial court. Upon appeal from the trial

court's denial of habeas corpus relief, the Pennsylvania Supreme Court gave full consideration on the merits to defendant's double jeopardy claim, and affirmed the trial court's denial of his petition. *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974). Under similar circumstances, the Fifth Circuit has stated:

> In this case, the courts of Florida have had an opportunity to promulgate a final, definitive ruling on the question involved. The Florida Supreme Court has authoritatively stated in the context of this case that in its opinion reprosecution of the petitioner will not violate his right not to be twice placed in jeopardy [citation omitted]. There is nothing more for the courts of Florida to say on this issue. *Fain v. Duff*, 488 F.2d 218 (5th Cir. 1973), cert. filed, 43 U.S.L.W. 3035 (May 25, 1974).

At least where the double jeopardy issue would be a complete defense to a retrial, the defendant is not required to await the second trial to assert the defense. *United States ex rel. Webb, supra*. In accordance with *Webb* and *Russo,* we find that this defendant sufficiently exhausted state remedies in the case before us to permit the district court to entertain his petition for a writ of habeas corpus. We now turn to the merits of the double jeopardy defense.

 The rule of law that controls here was enunciated by the Supreme Court in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 579 (1824).[1] There the Court held that discharge of a jury was a discretionary act of the trial judge and was proper when, given all the circumstances of the case, there was "manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* Under *Perez,* in the absence of manifest necessity, discharge of the first jury would bar a subsequent retrial, pursuant to the Double Jeopardy Clause of the Fifth Amendment. Our task, then, is to determine whether there was mani-

---

1. *See also* Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

fest necessity for the discharge of the jury in this case or whether discharge was required to prevent the defeat of "public justice." In doing so, we are sensitive to the statement of the Supreme Court in *United States v. Jorn*, 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971), that, "in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."[2] This consideration is particularly important in the case at bar where defendant's "confrontation" has spanned fourteen years.

■ But we are also aware of the overreaching importance in our system of justice, of preserving the impartiality and even the *appearance* of impartiality of the jury. In *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), the Supreme Court stated:

> There can be no condition of things in which the necessity for the exercise of this power [to discharge the jury] is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused. *Id.* at 154, 12 S.Ct. at 172.

In most cases where the possibility of jury bias arises, the prudent course may well be for the trial judge to examine the jurors and cautiously consider alternatives to discharging the jury. In the words of the Supreme Court in *Jorn*, the judge must not foreclose the defendant's option to go before a particular jury "until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn, supra,* 400 U.S. at 485, 91 S.Ct. at 557.

■ We are not prepared to say that this "scrupulous exercise of discretion" mandated by *Jorn* requires in every instance a thorough examination of the jurors and consideration of the alternatives to discharge, such as continuance. We believe that the exercise of discretion by the trial judge may in fact be based, in particularly compelling cases, solely on a common-sense assessment of the possibility that a certain factual situation may jeopardize "the ends of public justice."

In the present case, we cannot conceive of a fool-proof course of inquiry which would have exposed, to the trial judge, any bias resulting from the association of defendant's father-in-law with the jury while not revealing to them the crucial fact from which prejudice was likely to flow during the course of the trial—that the tipstaff who had attended to their needs during the entire first week of the court's session was the father of the murder victim in the case before them. Moreover, even if the trial judge, after questioning the jury, had been able to conclude that the jury was not in fact prejudiced as a result of their exposure to defendant's father-in-law, we think the ends of public justice would not have been served by proceeding with the trial. We say this because the appearance of impropriety, now made public, would necessarily have infected public respect for the verdict. We think this factor overrode the interest of the defendant in being judged by that particular jury even under the aggravated circumstances presented.

■ We think the Supreme Court's decision in *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1964),

---

**2.** Of course sensitivity to the needs of the defendant does not always lead to retention of a particular jury, but may compel discharge.

*See* Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

is persuasive here. In that case, the trial jury had been, for the three day duration of the trial, in the custody of two deputy sheriffs who were the principal witnesses for the prosecution. Although the trial judge had conducted a hearing on the issue of prejudice and had concluded, on the basis of testimony by the deputies, that there was none, the Supreme Court was unimpressed. The Court stated:

It is true that at the time they testified in open court [the deputies] told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution. We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial—an association which gave these witnesses an opportunity, as [one deputy] put it, to renew old friendships and make new acquaintances among the members of the jury. Id. at 473, 85 S.Ct. at 550. [footnote omitted].

As in Turner, we are confronted with more than a "brief encounter" between members of the jury and one likely to jeopardize the jury's impartiality. As in Turner, we find the potential for prejudice was so great that, despite the absence of concrete proof of bias, we think the trial judge would have been ill-advised to allow the proceedings to continue. We therefore conclude that the ends of public justice dictated discharge of the jury in this case and that defendant may be retried without violation of the Double Jeopardy clause.

The judgment of the district court will be affirmed.