[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 976 
The appellant was charged with murder in the second degree. A jury found her guilty of manslaughter in the first degree and fixed her punishment at five years imprisonment. On this appeal the only question presented for review is whether the constitutional prohibition against double jeopardy barred a second trial where the court discharged the jury in the first trial and granted the state's motion for a mistrial on the basis of "juror conduct".
The factual background for the argument on appeal is not complex. The appellant was brought to trial and members of the petit jury venire were qualified by the court and questioned on voir dire by the prosecution. The district attorney announced satisfied with the qualifications of the venire and a jury was selected, sworn and impaneled. The jury was not questioned as to whether anyone knew the accused or her family. The only inquiry in this regard was whether any of the prospective jurors were related by blood or marriage to the appellant.
After the testimony of the first witness for the state, the trial was recessed for lunch. The jurors were instructed that they would have to stay together during the recess and were warned not to "talk about the case". When court reconvened, the district attorney informed the trial judge that as the jury returned to the courtroom he noticed one of the jurors, Mr. Doc Woodson, talking to the mother of the appellant. The trial judge placed Mr. Woodson under oath and discovered that the juror had known the appellant for practically all of her life. The district attorney requested a mistrial on the basis that some communication had been made between the juror and the mother of the appellant and because the juror admitted that he did know the appellant and her mother. The trial judge then made the following comment without further investigation.
 "THE COURT: Well, let the record reflect that I did observe the communication between the lady in the courtroom and it was called to my attention that a communication was going on between the lady in the courtroom and the juror. I observed that communication, that it was in Court, and at this time I will direct that the case be mistried.
"A mistrial is granted to the District Attorney.
 "It's probably my fault that we have gotten to this point because it has wasted your time for the day and we have wasted the jury expenses for today.
 "I hope that you will accept my apologies for this because I should have asked the question myself, even if the attorneys did not, if any of the jurors knew the family or knew the defendant. *Page 977 
 "However, I want it to be entirely clear that — and I don't mean, here I am young and this is my first time and my first day — I will not tolerate communication between jurors and parties at trial while the case is in session. And I'm not blaming you, Mr. Woodson, because I probably did not make that clear; but I will make sure that I make that clear tomorrow and I will take the blame for it."
The minute entry of the trial court reflects that the mistrial was granted on motion of the state "due to conduct of juror". No inquiry was made into the substance of the communication before the mistrial was granted.
When the state attempted to reprosecute the appellant one week later the defense filed a plea of former jeopardy alleging that a second trial would subject her to double jeopardy because the mistrial was granted for insufficient reason. In support of the plea the testimony of the juror, Mr. Woodson, and the appellant's mother, Fanny Morgan, was offered. Mrs. Morgan testified that during the lunch recess the daughter of Mr. Woodson asked her to tell Mr. Woodson that, since his daughter had to go to work, he should catch a ride home from the courthouse with the Morgans. Mrs. Morgan relayed this message to Mr. Woodson in the courtroom as the jury returned from lunch. Mr. Woodson testified that Mrs. Morgan "called me and told me my wife told me to come back with them".
Upon consideration of the argument of counsel and the testimony of these witnesses, the trial court denied the plea of former jeopardy and in doing so made the following comments.
 "The granting of the mistrial was primarily based on the conversation between the defendant's mother and the juror, when I had instructed them not to talk to anyone about the case. I observed, personally, the conversation between the lady and the juror, which the District Attorney called to my attention, and said, `you see what's going on' and I saw it, and called Mr. Woodson over before the bench and asked him the questions that would appear on record."
And thereafter during the argument of the attorneys the following occurred:
 "MR. GREENE (Defense Counsel): I think that the record will bear out the fact that even though the defense counsel, at the time of the state's motion, didn't object per se, we did ask that the substance of the conversation be admitted, or that we be made known of what was said. And at that time the District Attorney pointed out that he did not inquire into the substance of the conversation, he just determined that the juror and the defendant and the defendant's family were close friends, and that on those grounds, he moved for a mistrial. I think that the State is entitled to a fair trial, but I don't think the State is entitled to two fair trials.
 "MR. HARPER (Assistant District Attorney): I don't think that was the basis for the request for mistrial, what Mr. Greene has just stated. It was not the fact that there was a close friendship there between the defendant and the juror. It was the fact that there was a communication in violation of the Court's specific instructions to the jury.
 "THE COURT: For clarification of the record, I did not grant it simply because they were friends."
When a mistrial is declared by a trial court without the consent of the defendant, the double jeopardy clause of both the Alabama and United States constitutions permits retrial of the accused only if there was a manifest necessity for the mistrial or if the ends of public justice would otherwise be defeated. Section 9, Alabama Constitution of 1901; Amendment V, Constitution of the United States; United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). Section 9 of the Alabama Constitution provides that "courts may, for reasons fixed by law, discharge juries from the consideration of any case." The reasons fixed by law for discharge are set forth in § 12-16-233, Code of Alabama 1975.
 "The court or presiding judge in all cases of jury trial may discharge the jury without *Page 978 
giving a verdict, with the consent of all parties to the trial or without the consent of the parties, when, in the opinion of the court or judge, there is a manifest necessity for the discharge or when the ends of justice would otherwise be defeated. In all cases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial, and no person shall gain any advantage by reason of such discharge of the jury."
This section fixes the reasons for a discharge and leaves it to the opinion of the trial judge to determine whether or not the reason, as fixed by law for the discharge, really exists.Andrews v. State, 174 Ala. 11, 56 So. 998 (1911); Brewer v.State, 24 Ala. App. 410, 137 So. 454 (1931).
Time and time again the courts have refused to formulate rigid or mechanical rules governing the circumstances under which a trial judge could declare a mistrial without giving rise to a defense of double jeopardy. United States v. Perez, supra, 22 U.S. at 850, 6 L.Ed. at 165; Wade v. Hunter,336 U.S. 684, 690, 69 S.Ct. 834, 837-838, 93 L.Ed. 974 (1949); Illinoisv. Somerville, 410 U.S. 458, 463, 93 S.Ct. 1066, 1070,35 L.Ed.2d 425 (1973). The very vagueness of the manifest necessity and ends of justice formulation, while maintaining the verity of the test, necessarily makes application imprecise. United States v. Grasso, 552 F.2d 46, 51 (2nd Cir. 1977). "Virtually all (double jeopardy) cases turn on the particular facts . . ." Illinois v. Somerville, supra,410 U.S. 458, 464, 93 S.Ct. 1066, 1070.
A mistrial only springs into being upon a manifest or pressing necessity or when the ends of justice would otherwise be defeated. Crouch v. State, 53 Ala. App. 261, 299 So.2d 305, cert. denied, 292 Ala. 718, 299 So.2d 312 (1974). Examples of proper manifest necessity may be found in Parham v. State,47 Ala. App. 76, 79, 250 So.2d 613 (1971) and Hawes v. State,88 Ala. 37, 62, 7 So. 302 (1889). In legal effect a mistrial is the equivalent of no trial at all and should only be granted because of some circumstances indicating that justice may not be done if the trial continues. Long v. City of Opelika,37 Ala. App. 200, 66 So.2d 126 (1953). A motion for a mistrial implies a miscarriage of justice if the trial continues. The word is not ordinarily used to indicate a mere erroneous ruling of law but specifies such fundamental error in a trial as would vitiate the result. Hallman v. State, 36 Ala. App. 592,61 So.2d 857 (1952). The entry of a mistrial is not lightly to be undertaken and should only be ordered as a last resort. Thomasv. Ware, 44 Ala. App. 157, 204 So.2d 501 (1967).
Where there is no legal necessity for abandoning the trial and declaring a mistrial, the discharge of the jury operates as an acquittal of the accused and will sustain a plea of former jeopardy and bar a second trial of the accused. Ned v. State, 7 Port. 187 (1838); McCauley v. State, 26 Ala. 135 (1855); Spelcev. State, 20 Ala. App. 412, 103 So. 694, cert. denied, 212 Ala. 559,103 So. 705 (1924).
It is often stated that the granting of a mistrial is within the sound discretion of the trial judge. 7 Alabama Digest, Criminal Law, 1155. However the exercise of the power to discharge a jury is not a matter of unbridled discretion and the exercise of that power is always open to review on appeal.Hawes v. State, supra, 88 Ala. 62. "The judge must determine the existence of the facts, but when they are ascertained, the law determines whether they constitute a case of necessity."Ned v. State, supra, 7 Port. 210.
In Alabama the trial judge is required to state the reason or cause for the mistrial. Section 12-16-233, Code 1975; Spelce v.State, supra, 20 Ala. App. 416, 103 So. 694. Here, the minute entry states that the mistrial was granted due to "conduct of juror". However the record reflects that the discharge was ordered because of an unauthorized communication between a juror and the mother of the accused. Apparently an additional reason was the fact that the juror was discovered to be a friend of the accused and her mother. To these reasons *Page 979 
we will apply the legal principles set forth above and determine whether in the light of all the circumstances the trial court exercised sound discretion in discharging the jury and whether a mistrial was warranted by manifest necessity or by the ends of justice.
The mere fact that some unauthorized communication between a juror and another is had does not constitute grounds for mistrial. Only the prejudicial nature or substance of such a conversation will justify a discharge of the jury, Bascom v.State, Ala.Cr.App., 344 So.2d 218, 222 (1977); Ballard v.State, 28 Ala. App. 346, 184 So. 259, reversed on other grounds,236 Ala. 541, 184 So. 260 (1938), in the absence of a finding and determination by the trial judge of possible juror bias or that the mistrial is necessary to preserve the impartiality or even the appearance of impartiality of the jury. United Statesv. Hewitt, 517 F.2d 993, 996 (3rd Cir. 1975); Turner v.Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). A mistrial is not required because of an innocent conversation between a juror and another during the trial. United States v.Love, 535 F.2d 1152 (9th Cir. 1976); United States v.Henderson, 404 F.2d 832 (9th Cir. 1968); Bacino v. UnitedStates, 316 F.2d 11 (10th Cir. 1963); United States v. Lubrano,529 F.2d 633 (2nd Cir. 1975).
The trial judge should consider the alleged misconduct on the basis of how it might affect or influence men of ordinary impressionability. Williams v. State, 36 Ala. App. 26,58 So.2d 646 (1951). Therefore the mere determination that some unauthorized communication occurred without some additional finding by the trial judge will not constitute legal grounds for the granting of a mistrial. See 9 A.L.R.3d 1275, Annotation: Prejudicial effect, in criminal case, of communications between witnesses and jurors; 62 A.L.R.2d 298, Annotation: Contact or communication between juror and party or counsel during trial of civil case as ground for mistrial, new trial, or reversal; 86 A.L.R. 928, Annotation: Misconduct of juror which will authorize or require withdrawal of juror. The substance of the unauthorized communication as later disclosed reveals that the case was not discussed and the state was not prejudiced by such communication. Wright v. State, 57 Ala. App. 401, 328 So.2d 650 (1976); see also 7 Alabama Digest, Criminal Law, 956(12).
Additionally the fact that a juror is a "friend" of the accused and her family will not disqualify that juror or justify his discharge unless, of course, it be determined by the trial judge that the juror might be prejudiced, biased or interested. The rule is clearly stated in 50 C.J.S. Juries § 228, 974-975.
 "In general a juror is incompetent if he admits a friendship for one of the parties, or for members of the family of a party, which, other things being equal, would influence his verdict, or would cause him to believe such party unless contradicted by witnesses with whom the juror was personally acquainted, or where he admits a feeling of gratitude and obligation for services rendered him by one of the parties; and where it appears that the relations between a juror and one of the parties are of such an intimate character as would be reasonably calculated to influence his verdict, it is proper to exclude him. * * * A person is not incompetent as a juror merely because he knows, or is a neighbor, or an intimate acquaintance, of, or on friendly relations with, one of the parties, or members of his family, or with an officer of defendant corporation, or with one of the principal witnesses; nor is a juror incompetent because in a personal injury case he offered assistance to the injured person."
See also Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391
(1961); State v. Brazile, 229 La. 600, 86 So.2d 208 (1956);United States v. Fricks, 409 F.2d 19 (5th Cir. 1969).
Thus neither of the reasons assigned by the trial court for the granting of the mistrial was sufficient to justify the discharge of the jury. The comments of the trial judge reveal no more than the fact that an unauthorized communication was *Page 980 
had and that the juror was a friend of the accused. These facts do not authorize a finding by this court of bias or prejudice on the part of the juror. This was a finding to be made by the trial judge and absent his declaration of even reasonable suspicion or bias it would be mere fiction and speculation to assume that such existed. See State of Arizona v. Washington,546 F.2d 829 (9th Cir. 1977).
The appellant argues that it was an abuse of discretion on the part of the trial judge because he did not inquire into the substance of the conversation before granting the mistrial. Lest the import of this decision be misconstrued we feel compelled to address that point.
Where a trial judge discovers facts during a trial which indicate that one or more members of the jury might be biased against the state or the defendant it becomes his duty to discharge the jury and direct a retrial. A defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designated to end in just judgments. Wade v.Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974
(1949).
Reviewing courts have been predisposed to allow retrial whenever the judge has declared a mistrial because of suspicion that a juror has been contaminated. See Simmons v. UnitedStates, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891);Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73,39 L.Ed. 146 (1894); United States v. Chase, 372 F.2d 453 (4th Cir. 1967); United States v. Smith, 390 F.2d 420 (4th Cir. 1968). In each of these cases, after the trial judge had ascertained that a juror had received an improper communication which rendered suspect the ability of one or more of the jurors to reach an impartial verdict, the reviewing court did not require the judge to determine whether the communication had in fact prejudiced the juror. Discovery of the harmful communication in itself afforded grounds for mistrial. Whitfield v. Warden,486 F.2d 1118 (4th Cir. 1973); Smith v. Mississippi, 478 F.2d 88
(5th Cir. 1973).
 "As the cases dealing with the problem of juror disqualification indicate, a trial judge need not explore whether the extraneous communication has in fact prejudiced the juror. When a judge concludes that on the basis of facts and reasonable inferences to be drawn from the facts that a juror has been exposed to information that might taint his verdict, he may withdraw the juror in the exercise of his sound discretion without unconstitutionally subjecting the defendant to double jeopardy." Whitfield, supra, 486 F.2d 1123.
Thus it is said that the granting of a mistrial in cases of private communications between jurors and third persons is largely within the discretion of the trial judge, and his decision is subject to reversal only where that discretion has been abused. Tillman v. United States, 406 F.2d 930 (5th Cir. 1969); Green v. State, 252 Ala. 513, 41 So.2d 566 (1949).
This discretion of the trial court to grant a mistrial includes the discretion to determine the extent and type of investigation requisite to a ruling on the motion. UnitedStates v. Flynn, 216 F.2d 354, 372 (2nd Cir. 1954); Lewis v.United States, 295 F. 441 (1st Cir. 1924); Tillman, supra;Killilea v. United States, 287 F.2d 212 (1st Cir. 1961); UnitedStates v. Khoury, 539 F.2d 441 (5th Cir. 1976). A full evidentiary hearing at which witnesses and jurors can be examined and cross examined is not required. Tillman, supra, 406 F.2d 938. The trial judge need not examine the juror to determine if that juror admits to being prejudiced before granting a mistrial. Even if the testimony adduced concerning the improper communication reveals that the substance of the remarks is innocent or "mundane" and allegedly totally unrelated to the trial, the judge may reject such testimony and declare a mistrial based upon his assessment of the possible prejudice to the juror. United States v. Pridgeon,462 F.2d 1094 (5th Cir. 1972); Smith v. Mississippi, 478 F.2d 88 (5th Cir. 1973); see also United States v. McCunn, 36 F.2d 52
(D.C.N Y *Page 981 
1929). The trial judge may grant a mistrial in order to secure respect for the verdict of the jury and to uphold the appearance of fairness of the judicial process.
These rules, cited without an examination of the supporting factual circumstances, would appear to support the position of the state contending that the trial judge did not abuse his authority. Yet we have examined a number of cases in which the discretion of the judge in declaring a mistrial on the basis of an improper communication was upheld and in each case the harmful substance of the communication was discovered or it was determined by the trial judge that, while the pending case may not have been discussed with the juror, the mistrial was due to be granted because the appearance of impropriety would necessarily have infected public respect for the verdict.United States v. Hewitt, 517 F.2d 993, 996 (3rd Cir. 1975);Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424
(1965).[1] Here there was no such determination and the mistrial was ordered primarily because of the improper contact in and of itself without regard to the effect upon the juror or jury. Both Hewitt and Turner are distinguishable from the "brief encounter" situation presented here. In this case there was no showing of intimate or continuous association throughout the trial or inherent prejudice. There was no indication or finding by the trial judge that the mistrial was necessary to prevent the defeat of justice.
In reviewing this case we are sensitive to the admonition contained in United States v. Jorn, 400 U.S. 470, 486,91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971), that in the absence of a motion for a mistrial by the accused, the Perez doctrine of manifest necessity stands "as a command to trial judges not to foreclose the defendant's option (to continue with the jury as selected) until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." It has been noted that "(i)n most cases where the possibility of jury bias arises, the prudent course may well be for the trial judge to examine the jurors and cautiously consider alternatives to discharging the jury." Hewitt, supra, 517 F.2d 996. Yet each case must stand on its own merits and such an examination is not required under all circumstances.
 "We are not prepared to say that this `scrupulous exercise of discretion' mandated by Jorn requires in every instance a thorough examination of the jurors and consideration of the alternatives to discharge, such as continuance. We believe that the exercise of discretion by the trial judge may in fact be based, in particularly compelling cases, solely on a common-sense assessment of the possibility that a certain factual situation may jeopardize `the ends of public justice.'" Hewitt, supra, 517 F.2d 996.
The present factual situation is not of the character of the "particularly compelling" cases which would warrant a summary declaration of mistrial. "In all but the clearest cases, explicit findings are the best way for a trial judge to avoid the perils of the double jeopardy clause." United States v.Grasso, 552 F.2d 46, 53 (2nd Cir. 1977).
We are well aware that there must be a great deal of discretion reserved to the trial judge who, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the *Page 982 
jury's ability to decide the defendant's fate fairly and justly. Robinson v. State, 37 Ala. App. 403, 71 So.2d 843, cert. denied, 260 Ala. 700, 71 So.2d 846 (1953); Shadle v. State,280 Ala. 379, 194 So.2d 538 (1967). We are equally aware of the right of a defendant to have his fate determined by the jury first impaneled. However the record itself reveals nothing that would require the granting of a mistrial. Were the situation reversed and the juror a friend of the prosecutor who had conversed with the prosecutor about a matter unrelated to the case on trial, there can be little doubt that we would affirm the action of the trial judge in not granting the request of the defendant for a mistrial. The reasons cited by the trial judge do not constitute a legal necessity for declaring a mistrial and affirmatively disclose that no consideration was given to the effect of the misconduct upon the juror.
It is regrettable that the action of declaring a mistrial should have to be the basis for the ultimate release of the appellant. However her right to be tried by the jury first chosen and sworn to try the case is inviolable except where necessary to discharge that jury in the interest of the proper administration of public justice. No such necessity existed here.
We have carefully examined the entire record and are of the opinion that this judgment is due to be reversed and the cause rendered.
REVERSED AND RENDERED.
All Judges concur.
[1] In Hewitt, the court held that where the father-in-law of the defendant was employed as a tipstaff to attend the needs of the jury panel, and had been doing to for over a week, the potential for prejudice was so great that, despite the absence of any concrete proof of bias, the ends of public justice dictated discharge of the jury.
In Turner, the trial jury had been, for the three-day duration of the trial, in the custody of two deputy sheriffs who were the principal witnesses for the prosecution. Although the trial judge had conducted a hearing on the issue of prejudice and concluded, on the basis of testimony by the deputies, that there was none, the United States Supreme Court held that the judge's refusal to grant a mistrial was error because of "the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution." The court made a distinction between a "brief encounter" and a "continuous and intimate association."