(112 So: 92) ·

**LAUDERDALE v. STATE.** (8 Div. 483.)

Court of Appeals of Alabama.   March 29, 1927.

R. B. Patton, of Athens, for appellant.

Charlie C. McCall, Atty. Gen., and W. M. Rayburn, Asst. Atty. Gen., for the State.

BRICKEN, P. J. This appellant was charged by indictment with a felony. He was entitled to a fair and impartial trial by jury, a trial based upon the law and the evidence in this case. Const. 1901, art. 1, § 6. The following statement of fact, quoted from brief of appellant's counsel, is borne out by the record:

"When his case was called for trial, the defendant being absent, having sent to the trial judge a certificate from a physician that he was sick and could not attend court, the court issued a bench warrant and ordered the county health officer to accompany the sheriff to the home of the defendant and examine him to ascertain if he was able to come to court. The county health officer having made the examination, the sheriff forthwith arrested and brought the appellant into open court, arriving about 11 o'clock in the morning.

"After the arrival of appellant, in court, the attorney for appellant was sent for, and upon his arrival, the defendant, three witnesses, and the attorney retired to the anteroom when the defendant was seized with a violent vomiting spell, which was immediately reported to the court. The court again ordered the county health officer to examine the defendant, which was done, and the health officer again reported that he was unable to find anything wrong with the defendant. The defendant then asked the court to summon Dr. W. J. Hagan, which motion was granted, and upon the examination Dr. Hagan reported that he could not find anything materially wrong with the defendant; that the defendant's face bore an expression of physical pain or mental anguish, but that, in his opinion, it would not be injurious to the defendant to put him upon trial.

"All of this consumed about 50 minutes, during which time the court was in session, but the entire jury was at ease in the court room (except twelve jurors); much amusement was indulged in around the court room, over the condition of the defendant; some of the jurors were in the bar, some lounging in the jury box, and some in the main auditorium. Dewey Barber, a former deputy sheriff, and then a federal prohibition officer, stated to the attorney for the defendant, in an ordinary tone of voice, and after Dr. Hagan had made the examination of the defendant, 'Do you want me to send and get Dr. Bryan to examine the defendant?' meaning a well-known veterinary surgeon; that thereupon the crowd around the former deputy sheriff laughed, a large part of the crowd near the former deputy sheriff were jurors, and were near enough to hear the remark made by said Barber. Nute Hatchet, a member of the jury, while sitting in the jury box, and in the presence of about 21 people, a large part of whom were jurors, said to the attorney for the defendant, in an ordinary tone of voice, 'Plead the son of a bitch guilty, there are 39 other jurors that feel the same way I do about him,' and the crowd then around the said juror, Nute Hatchet, laughed and showed much merriment."

The appellant insists that, as a result of these occurrences, an unfavorable and highly prejudicial atmosphere was created, which precluded the defendant from receiving the fair and impartial trial to which he was entitled. By practically every known means the questions involved were properly presented, not only on the main trial, but also on the motion for a new trial, which was denied. On the hearing of the motion for new trial, defendant's counsel was examined as a witness for the movant, and, among other things, he testified:

"Nute Hatchet was a juror at that time, and while the defendant was in the anteroom, I passed by Nute, and he said to me, in substance, 'Go ahead and plead the old son of a —— guilty; that there are 39 other jurors on this panel that feel that he should go to the penitentiary, just like I do.' This was the only thing said by Nute Hatchet to me, and I

did not reply to his statement, nor speak to him, but I counted the men who were standing around close to him, and among others there were four jurors whose names I know and remember; in addition to these four jurors, the sheriff, and seventeen other people were there, some of them were jurors. This statement made by the Nute Hatchet was in an audible voice, and quite a deal of laughter was indulged in at the time."

The evidence of this witness was not disputed.

We note and approve the painstaking and careful manner in which the court made inquiry into these matters, and also that the court sustained defendant's challenge of each juror, who, on his voir dire, stated he had heard the statement of Nute Hatchet, or of Dewey Barber; and the court also, on its own motion, declared Nute Hatchet disqualified to serve as a juror. The court, however, overruled defendant's motion for a continuance, also his motion to quash the venire and his objection to going to trial. As stated, the motion for a new trial, in which all these matters were presented, was also overruled, and to these several rulings exceptions were duly reserved.

■■ The trial of this man was of grave and serious import to him, and of importance to the state. That the conduct complained of was highly improper, reprehensible, in fact, and should not have been indulged in cannot be doubted or questioned. The rule of law governing matters of this character and by which this court must be governed is not only that the misconduct complained of did affect the verdict, but might it have done so. In Driver v. Pate, 16 Ala. App. 418, 78 So. 412, this court said:

"* * * The question is not whether this misconduct on his part did affect the verdict, for it has been held many times that it need not be shown, necessarily, that the misconduct relied on as a ground for a new trial actually controlled or determined the verdict, if it is made apparent that the verdict might have been affected by it." Weaver v. State, 17 Ala. App. 506, 86 So. 179; Lakey v. State, 18 Ala. App. 442, 93 So. 51; Taylor v. State, 18 Ala. App. 466, 93 So. 78; Holladay v. State, 20 Ala. App. 76, 101 So. 86.

In this case the evidence discloses that the guilt of the accused rested upon inference only. There was no direct evidence connecting him with the offenses charged in the indictment. The prejudicial atmosphere created by the unseemly conduct of the several parties, upon the entering on this trial, was difficult, if not impossible, of eradication, and we are of the opinion that its natural tendency was to injuriously affect the substantial rights of the defendant, and that as a consequence the verdict of the jury might have been affected as a result thereof. Entertaining these views, we are constrained to hold that the court erred in its several rulings in this connection and should have granted the defendant's motion for a new trial.

Reversed and remanded.