McMILLAN, Judge.
From a conviction for the offense of rape in the first degree, in violation of § 13A-6-61, Code of Alabama (1975), and sentence of 25 years’ imprisonment, this appeal follows. For the reasons outlined below, the judgments of conviction and sentence are due to be affirmed.
The prosecutrix testified that, on the night in question, she, along with her boyfriend’s sister * and two other girl friends, went to a place in Muscle Shoals called “Boogins.” The prosecutrix stated that she had recently moved from Milwaukee and had been living in the Moulton area for only a few months. For this reason, she was unfamiliar with the area and locations. The four women went to Boogins, “listened to the music, [and] drank a few beers.” The prosecutrix testified that she drank four or five beers during the time she was at the bar, but stated that she did not become intoxicated. Later in the evening, the prosecutrix’s friends decided they wanted to go to another place. The prose-cutrix told her friends that she “just wanted to go home,” and would get a ride home with her boyfriend’s cousin, Rudy Terry.
After the prosecutrix’s friends had left, however, she was unable to find Rudy. When the prosecutrix tried to call her boyfriend, she did not get an answer. The prosecutrix was able to obtain a ride from a friend to a place called the “Biscuit Village.” She called a taxicab, but was told by the driver she did not have enough cash to pay for the ride home. The prosecutrix tried to convince the cab driver that he should accept her personal check for the cab fare, but he refused to do so, even though she assured him that she had money at her house to pay for the fare.
At this point, the appellant, along with a companion, drove up and offered to give the prosecutrix a ride home. The appellant indicated that he was going in the same direction as Moulton, and would be “more than happy to give [her] a ride.” The *1010 prosecutrix was assured that the ride would not be “out of the way” and she offered to pay for the gas. The prosecu-trix denied that she had ever seen either the appellant or his companion, James Lolly, before that time. The prosecutrix finally accepted the offer for a ride home when she realized that it was “the only way I was going to get home.”
The appellant told the prosecutrix that he was a “pool shark” who traveled around the country shooting pool for a living. He introduced himself as “David Smith” and introduced his friend as “Billy.” According to the prosecutrix, both the appellant and Lolley drank beer during the trip. When they arrived in Moulton, the prosecu-trix gave directions to get to her apartment. At this point, however, the appellant began to go the “wrong way” and “wouldn’t listen” to her directions.
The prosecutrix testified that she “got angry” and demanded to be let out of the car, but the appellant refused to stop. He indicated that he was “going to score pot” and refused to let her out of the car. When the prosecutrix insisted that he stop the car and let her out, the appellant told her to “shut up or he was going to beat my face in.” The appellant then began to drive around “endlessly” for some two or three hours. Nothing that the prosecutrix said seemed to “register” with the appellant, and he kept telling her to “shut up, just shut up.” At one point, he pulled a gun out from underneath the seat and gave it to Lolley, who was in the back of the car. By this time, the prosecutrix had no idea where they had gone but knew that they were “in the mountains.”
The prosecutrix requested that she be allowed to go to the bathroom, hoping that the appellant would stop at a gas station. Instead, the appellant pulled over to the side of the road and let the prosecutrix out of the car. When the prosecutrix went into the woods, the appellant followed her.
The appellant slapped the prosecutrix and threatened her with the gun. He then forced her to have sexual intercourse even though she pleaded and struggled. The victim testified that she was “scared to death.” The appellant then drove back to Haleyville and allowed the victim to make a telephone call. At this point, the victim was able to summon the police. When they arrived, the police officers arrested the appellant and found in the car a “long barreled twenty-two revolver.”
I
The first issue raised by the appellant concerns the failure of the trial court to grant a motion for a mistrial when the prosecutrix spoke out during the trial. At the trial, the appellant testified in his own behalf. According to the appellant, he, along with a companion, James Lolley, had been drinking beer and playing pool at a bar called “Boogins” on the night in question. According to the appellant, he met the prosecutrix while at the bar and later offered to give her a ride home.
On the way to the prosecutrix’s home, according to the appellant, they drank beer and then decided to go “see about some marijuana, buy some pot.” The appellant said that, after stopping to let the prosecu-trix go to the bathroom, he followed her into a wooded area next to the road. The appellant testified that they “struck up a conversation,” drank some beer, and began to kiss and “stuff.” The appellant then stated as follows:
“[Defense counsel]: Did you have sexual intercourse with her?
“A Yes, sir.
“Q Did she protest?
“A No, sir.
“Q Did she yell or scream?
“A No.
“[PROSECUTRIX]: Did you know you go to hell for lying. I won’t put up with it.
“MR. MASDON [Defense counsel]: We move for a mistrial, Judge.
“MR. TIDWELL [District Attorney]: Can we have a few minutes, your hon- or, she is very distraught and upset.
“THE COURT: We’ll take a break at this time. Motion is denied.
*1011 “MR. MASDON: Judge, can I at least ask for admonishing instructions to the jury to disregard.
“THE COURT: Ladies and gentlemen, disregard the emotional outburst of the prosecuting witness. Be back in your seats in ten minutes.”
According to the appellant, the above-quoted outburst on the part of the prosecutrix constituted a denial of the appellant’s “fundamental right to a fair and impartial trial.”
In support of his position, the appellant cites Ex parte Troha, 462 So.2d 953 (Ala.1984). As the State notes in its brief, however, the Troha case involved improper influence on the jury as a result of activity which occurred outside of the courtroom. In the present case, the prosecutrix’s statements occurred inside the courtroom, and admonishing instructions were given to the jury after the statement was made. Contrary to the appellant’s position, it is not apparent that the statement was so “prejudicial and improper” as to constitute a denial of his right to a fair trial. Of course, “it is axiomatic that the trial judge is in a better position than an appellate court to determine whether remarks were so prejudicial as to be ineradicable.” . (Citations omitted.) Harbor v. State, 465 So.2d 455, 459 (Ala.Cr.App.1984), writ quashed, 465 So.2d 460 (Ala.1985).
As this court, per Presiding Judge Bowen, recently stated, “ ‘a motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court.’ ” Lawson v. State, 476 So.2d 116 (Ala.Cr.App.), cert. quashed, 476 So.2d 122 (Ala.1985), quoting Nix v. State, 370 So.2d 1115, 1117 (Ala.Cr.App.), cert. denied, 370 So.2d 1119 (Ala.1979). In the present case, “any prejudice suffered by the appellant as a result of the statements was erased by the curative instructions of the trial court.” Dixon v. State, 476 So.2d 1236 (Ala.Cr.App.1985).
As this court, per Judge Taylor, stated in Dixon, supra, “[tjhere is a prima facie presumption against error where the trial court immediately charges the jury to disregard the improper remarks or answers.” (Citations omitted.) In analyzing the procedural and policy implications which underlie the concept of a mistrial, this court in Dixon also stated as follows:
“A motion for a mistrial implies a miscarriage of justice and should only be granted where it is apparent that justice cannot be afforded. [Citation omitted.] A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted. [Citations omitted.]
“The granting of a mistrial is an extreme measure, and a mistrial should be denied where the prejudicial qualities of the comment can be eradicated by the action of the trial court.” [Citations omitted.]
See also: Fleming v. State, 470 So.2d 1343, 1345 (Ala.Cr.App.), cert. denied, — U.S. -, 106 S.Ct. 164, 88 L.Ed.2d 136 (1985).
II
The second issue concerns the propriety of the trial court’s denial of defense counsel’s motion for a mistrial based upon a statement made by a prospective juror. During the jury selection process, the following exchange occurred:
“MR. TIDWELL [District Attorney]: How many folks on the panel know Johnny Sides?

“MR. TIDWELL: Let me start with Mr. Lane. You have already mentioned that you live in the same community as him. Have you known him most of his life?
“P.J. LANE: I have been living about 15 years in that location.
“MR. TIDWELL: Where is that?
“P.J. LANE: South Haleyville.
“MR. TIDWELL: And you say you live just a few blocks?
“P.J. LANE: About two or three blocks from him.
*1012 “MR. TIDWELL: Mr. Lane, would you say that your families are friends or you know his family or anything?
“P.J. LANE: No. I just know he’s in and out of trouble all of the time and I just—
“MR. TIDWELL: —You just know him when you see him?
“P.J. LANE: Right.
“MR. TIDWELL: Would the fact that you know him affect your decision in this case if you are selected on the jury, either way?
“P.J. LANE: Shouldn’t.
“MR. TIDWELL: You feel you could render a fair and impartial trial in this case?
“P.J. LANE: Yes.
“MR. MASDON [Defense counsel]: Excuse me. Could we approach the bench.
“(Bench conference, off the record.)
“MR. MASDON: To that reply that Johnny was in and out of trouble all of the time, I move for a mistrial and that we dismiss this venire and try it later in front of another venire.
“THE COURT: Denied.”
According to the appellant, his conviction is due to be reversed because of Prospective Juror Lane's comment that “I just know he’s in and out of trouble all of the time.” Contrary to the appellant’s position, however, the prospective juror’s response on voir dire was not “per se prejudicial” to the appellant. For this reason, the trial court’s denial of the request for a mistrial was proper. Thomas v. State, 49 Ala.App. 537, 539, 274 So.2d 93, 95 (1973).
Additionally, the appellant neither alleged nor proved that the entire jury ve-nire was somehow “tainted with prejudice” as a result of the prospective juror’s comment. Thus, the motion to quash the ve-nire was properly denied by the trial court. Harris v. State, 394 So.2d 96, 98 (Ala.Cr.App.1981), citing Nickerson v. State, 283 Ala. 387, 217 So.2d 536 (1969).
AFFIRMED.
All the Judges concur.

 At the time of the events in question, the prose-cutrix was engaged to her boyfriend and they subsequently got married. During the trial, the prosecutrix referred to her boyfriend as her "fiancé.”