ON APPLICATION FOR REHEARING
The opinion of this Court issued March 29, 1991, is hereby set aside. The following becomes the opinion of this Court.
William Warren Holland, the appellant in this case, and O'Neal Goodman[1] were separately indicted for robbery in the first degree. Their cases were consolidated for trial and both men were convicted. Holland was sentenced to life imprisonment *Page 545 
without the possibility of parole as a habitual felony offender. In addition, he was fined $20,000 and was ordered to pay $10,000 to the victims' compensation fund.
 I
On voir dire of the venire, there was no response to the question of the trial court, "Do any of you have a fixed opinion as to either the guilt or innocence of either of the defendants which would bias your verdict?" Immediately before a lengthy recess, the trial court instructed the venire, "Don't discuss the case in any way." However, during that lengthy recess which occurred prior to the jury's being selected,[2]
veniremember Ward verbally expressed her opinion that the appellant was guilty. At the hearing on this issue, veniremember Oates testified that while the veniremembers were standing in the hallway of the courthouse, veniremember Ward said that "you can tell by looking at him [Holland] that he is guilty. . . . And there was some ten to 15 people standing there, and there was a general discussion going on. And a gentleman that was wearing, I believe, gray pants and a pink shirt said, 'Yes. They could save us a lot of money if they would just simply take a vote now and let us vote whether he was guilty or not.' " The hearing on this issue was held after the jury had been selected but before any witness had testified in the appellant's trial. Ward was selected as a member of the jury. The male who responded to Ward's comment was never identified, and there was no determination made whether or not he was a member of the jury.
The trial court denied the appellant's and the codefendant's motion for a mistrial and stated: "I intend to ask each of the jurors if they're able to abide by [my instructions] and to make their decision based only on the evidence in the case."
After disposing of some pretrial motions, the trial court instructed the jury on the burden of proof, the presumption of innocence, and charged the jury "that you can't discuss the case with anyone or allow anyone to discuss it with you." During these opening instructions, the trial court made the following inquiry:
 "Now, before we begin the case, I want to ask each of you if you're able to put aside any preconceived notions you may have about the facts or evidence in this case and able [sic] to apply the standard of law that the defendants are presumed to be innocent of the charge before we begin this case any further. And I'll begin with the first row.
 "(WHEREUPON, the jurors were polled and each responded affirmatively to the question, Can you do that.)"
This matter was not pursued again until the end of trial. After the closing arguments by counsel, but before the trial court instructed the jury, the appellant requested "to preserve his right at some time to poll juror Ward as to what went on prior to the selection of the jury." The trial court responded:
 "All right. So your request is to poll the alternate juror [Ward] I'm going to excuse. It is denied. In order to remove any doubt since it was raised earlier in the proceedings by one of the defense counsel about the juror had made some statement — even though I polled them and was satisfied that she could sit as a juror — in an abundance of caution, I'm going to excuse her from the case. So that will make that issue moot. So I'll deny your request.
 "DEFENDANT HOLLAND: Judge, she spoke to a man and his name never came up. Although, there's only two members of the jury that are men now, it's highly *Page 546 
unlikely that those two men were the ones who were one of the ones that spoke up.
 "THE COURT: All right. I'll deny your request. I'm going to excuse her from the case and excuse her from any further deliberations in the case.
 "DEFENDANT HOLLAND: There may have been other people in the area that are members of the jury now that are female and heard the statement.
 "THE COURT: All right. Well, you've made your request, and I'll deny your request."
A motion for mistrial "is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion." Ex parteJefferson, 473 So.2d 1110, 1114 (Ala. 1985), cert. denied,479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986). In cases involving juror misconduct, a trial court generally will not be held to have abused its discretion "where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of the appellant were not prejudiced by the remark." Bascom v. State,344 So.2d 218, 222 (Ala.Cr.App. 1977). However, the trial judge has a duty to conduct a "reasonable investigation of irregularities claimed to have been committed" before he concludes that the rights of the accused have not been compromised. Phillips v.State, 462 So.2d 981, 990 (Ala.Cr.App. 1984). His investigation should include a "painstaking and careful" inquiry into the alleged juror misconduct. Lauderdale v. State, 22 Ala. App. 52,54, 112 So. 92, 93 (1927).
In this case, the trial court abused its discretion by not conducting any inquiry, much less a "painstaking and careful" one, specifically to determine whether: (1) Ward made the remark attributed to her, (2) any other juror heard the remark, and (3) any juror who heard the remark could disregard it and decide the case solely on the evidence.
The fact that this case involves a prejudicial comment by a veniremember rather than an improper remark by an empaneled and sworn juror is immaterial, because the trial court's duty to ensure that the accused receives a fair trial is the same in either situation. See Forrest v. State, 257 Ala. 97,57 So.2d 385 (1952); Newsome v. State, 570 So.2d 703 (Ala.Cr.App. 1989);Hopkins v. State, 429 So.2d 1146 (Ala.Cr.App. 1983); Smith v.State, 432 So.2d 550 (Ala.Cr.App. 1983); Lauderdale v. State,22 Ala. App. 52, 112 So. 92 (1927). Compare Gibson v. State,555 So.2d 784 (Ala.Cr.App. 1989).
In Forrest v. State, 257 Ala. at 98, 57 So.2d at 386, a venireman stated, during qualification of the venire, that he knew the murder victim to have been "a good man." Defense counsel moved for a mistrial and asked that the statement be excluded, but he did not request curative instructions. The Alabama Supreme Court observed:
 "A trial does not begin until the jury panel is completed and the jury sworn. But the court should be careful to see that accused is accorded all rights preparatory to his trial.
 ". . . The trial proper had not begun and so the motion to exclude and objection to the statement of the venireman was inapt. . . . [T]he court should be glad to see that no prejudicial influence occurs at that stage of the proceedings as well as after the trial begins, whether there is a motion made or not or whether the motion is apt."
Forrest, 257 Ala. at 98-99, 57 So.2d at 38687 (emphasis added) (citation omitted). See also Ala. Code 1975, § 12-16-6, which provides the following:
 "It is the duty of the court, before administering the oath prescribed by law to any grand, petit or tales jurors, to ascertain that such juror possesses the qualifications required by law, and the duty required of the court by this section shall be considered imperative." (Emphasis added.)
In Newsome v. State, 570 So.2d 703, 712 (Ala.Cr.App. 1989), a murder prosecution, venireperson Rice, who had been struck peremptorily, told the trial judge before the *Page 547 
beginning of the trial that, during the jury selection process, venireperson White had made the following statement: "[Accused] is guilty. He killed that girl." Rice also mentioned that she had heard venireperson Howe express an opinion about the facts of the case to venireperson Lyon. The trial court first examined Rice and Howe. Then, as this court's opinion inNewsome sets out, the judge took the following steps:
 "Each of the jurors selected to try the case was individually called into chambers and questioned by the court and counsel. Each denied hearing any comments about the case, and each reiterated that he or she could give appellant a fair trial and base a decision solely on the evidence presented during the trial. Mrs. Lyon denied hearing any statement from Mrs. Howe concerning the case, but did remember talking with her about matters unrelated to the case. Mrs. White testified that she had not made up her mind about the case, that she believed the defendant to be innocent until proven guilty beyond a reasonable doubt, and that she could give him a fair trial."
Newsome v. State, 570 So.2d at 712. Mrs. White, an alternate, was excused before the jury began its deliberations. In light of the thorough investigation by the trial court into the circumstances surrounding the comments made by the prospective jurors in Newsome, this court found no abuse of discretion in the trial court's denial of the defense motion for mistrial.
In Hopkins v. State, 429 So.2d 1146, 1152 (Ala.Cr.App. 1983), a veniremember who stated, in the presence of other members of the jury panel, "I think [appellant] should have already been hung," was successfully challenged for cause. This court held that the remark did not entitle accused to a mistrial because the trial court specifically instructed the other veniremembers to disregard the comment and questioned the entire panel to ascertain whether other prospective jurors could base their verdict solely on the evidence.
In Smith v. State, 432 So.2d 550, 551 (Ala.Cr.App. 1983), a robbery prosecution, a venireman commented, after jury selection but before swearing in, that the last time he was robbed he was "in a nervous condition" for a month and a half afterwards. The local press reported the comment, and defense counsel requested the trial court to question the jurors to determine whether they had heard the remark or read the article, and if so, whether they were thereby prejudiced. The trial court complied with the request, and then denied a motion for mistrial based on alleged juror contamination. This court held:
 "In the exercise of its discretion, the trial court in the instant case ultimately determined that the jurors were capable of rendering a fair and impartial verdict. The court responded to the potential problem swiftly and professionally. In the absence of evidence of abuse of the trial court's discretion, we find no error in the denial of appellant's motion."
Smith v. State, 432 So.2d at 552.
In Lauderdale v. State, 22 Ala. App. 52, 112 So. 92 (1927), a veniremember told the attorney for the accused, in the presence of other prospective jurors, "Go ahead and plead the old son of a bitch guilty; that there are 39 other jurors on this panel that feel that he should go to the penitentiary, just like I do." 22 Ala. App. at 53, 112 So. at 93. The trial court, on its own motion, declared the veniremember disqualified to serve on the jury, and sustained the accused's challenge for cause to each prospective juror who had heard the remark. "[N]ot[ing] and approv[ing] the painstaking and careful manner in which the court made inquiry into these matters," the Court of Appeals nonetheless reversed, because it found that
 "the prejudicial atmosphere created by the unseemly conduct of the several parties, upon the entering of this trial, was difficult, if not impossible, of eradication, and . . . its natural tendency was to injuriously affect the substantial rights of the defendant, and that as a consequence the verdict of the jury might have been affected as a result thereof."
Lauderdale v. State, 22 Ala. App. at 54, 112 So. at 93. *Page 548 
In Gibson v. State, 555 So.2d 784, 796 (Ala.Cr.App. 1989), the trial judge was informed, near the end of trial, that while the jury was being qualified, venireperson Griffin "had expressed an opinion as to appellants' guilt." Defense counsel moved for mistrial, and when that motion was denied, counsel then stated "Judge, I wonder [if] somebody on this panel heard [Griffin] express her opinions." 555 So.2d at 797. Juror Griffin was excused prior to opening arguments and did not participate in any of the jury's deliberations. This court stated the issue as follows: "whether the remarks made by Mrs. Griffin during voir dire were heard by anyone who ultimately served on the appellant's jury, thereby contaminating the jury." 555 So.2d at 796.
We concluded that the evidence was "insufficient to establish any contamination of the appellants' jury." Id. at 797. We observed that although counsel "failed [at trial] to pursue the course of action necessary to investigate the potential contamination of their clients' jury" by neglecting to make "a formal motion that the jury be polled" or to "request curative instructions of any kind," the attorneys were nevertheless "assured that they could pursue this matter by motion for new trial if necessary." Id. However, at the hearing on motion for new trial, appellants simply did not establish their right to relief:
 "All that was adduced concerning this issue during the hearing on appellants' motion for new trial was that Mrs. Griffin remarked to Sylvia Hamilton that 'she felt that, that the girl who was dead, her life meant as much to her as the insurance money meant to [the accused].' Ms. Hamilton went on to state that Mrs. Griffin did not make any specific remarks as to whether she believed the appellants were guilty or innocent. Ms. Hamilton added that she did not think anyone else heard Mrs. Griffin's remarks. None of the jurors who returned the guilty verdict were subpoenaed to testify whether any of them had overheard Mrs. Griffin's remarks.
 "We find Mrs. Hamilton's testimony insufficient to establish any contamination of the appellants' jury."
Gibson v. State, 555 So.2d at 797. See also Sides v. State,487 So.2d 1008, 1012 (Ala.Cr.App. 1986) (comment made by veniremember during voir dire that he knew accused had been "in and out of trouble all the time" not "per se prejudicial" and there was no error in denial of motion for mistrial or motion to quash venire because appellant neither alleged nor proved that entire venire was "tainted with prejudice").
Gibson stands for the proposition that when an accused has been tried by a jury allegedly influenced by the improper remarks of a veniremember, the accused should be given an opportunity, if requested, to prove his allegations of jury contamination. We do not interpret Gibson to deny appellant's right to relief here because appellant was never given that opportunity. Despite the fact that appellant's attorneys, like Gibson's counsel, "failed to pursue the course of action necessary to investigate the potential contamination of their clients' jury" by neglecting to make "a formal motion that the jury be polled," Gibson is not controlling for two reasons. First, appellant himself requested that the jurors be polled to determine whether any of them heard the improper comments by veniremembers. Second, appellant raised this issue by his motion for new trial and, unlike counsel in Gibson, appellant was not "assured that [he] could pursue this matter by motion for new trial." In fact, the trial court denied appellant's motions for new trial without a hearing.
Forrest, Newsome, Hopkins, and Smith stand for the proposition that when the trial judge acts promptly to investigate the circumstances surrounding the making of an inherently prejudicial remark by a veniremember, determining specifically whether the remark was made and whether the remark had a prejudicial effect on those who, ultimately selected to serve as jurors, heard it, there is no error in the denial of a motion for mistrial based on jury contamination.
Lauderdale stands for the proposition that, notwithstanding the most careful *Page 549 
inquiry by the trial court into the effect of the offending remark, some veniremember comments are so inherently prejudicial as to be ineradicable. Lauderdale also makes it clear that the test of vitiating influence based on the misconduct of a veniremember is not whether the improper remark by the veniremember
 "did affect the verdict, for it has been held many times that it need not be shown, necessarily, that the misconduct relied on as a ground for a new trial actually controlled or determined the verdict, if it is made apparent that the verdict might have been affected by it."
Lauderdale v. State, 22 Ala. App. at 54, 112 So. at 93 (quotingDriver v. Pate, 16 Ala. App. 418, 419, 78 So. 412, 413 (1918)) (emphasis added). This is the same criterion used for determining whether juror misconduct requires a new trial:
 "The standard for determining whether juror misconduct requires a new trial is set forth in Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460
(1932) [citing Lauderdale with approval].
 " 'The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered.' "
Ex parte Lasley, 505 So.2d 1263, 1264 (Ala. 1987) (material in brackets added) (emphasis added by the court in Lasley).
"A crucial assumption underlying the jury system is that juries will follow the instructions given them by the trial judge." Dobard v. State, 435 So.2d 1338, 1346 (Ala.Cr.App. 1982), affirmed, 435 So.2d 1351 (Ala. 1983), cert. denied,464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). However, using this assumption to conclude here that, regardless of the improper remarks by Ward and the unidentified male veniremember, those two venirepersons would, as jurors, have been guided by the trial court's instruction to presume the appellant innocent, is invalid. Ward and the unidentified venireman had already shown, as veniremembers, a disregard of the trial judge's instruction not to "discuss the case in any way." Without having examined them further, there was no warrant for assuming that, as jurors, they would have heeded the court's instructions more scrupulously.
In light of evidence that Ward and at least one other prospective juror disregarded the trial court's initial admonition not to discuss the case, the trial court's cursory and nonspecific instructions to "put aside any preconceived notions" and to presume the appellant innocent constituted an abuse of discretion.
When the prejudicial comments made by Ward and the unidentified male veniremember were brought to the attention of the trial court, the court should have, at the very least, questioned juror Ward individually to determine whether she made the alleged remark, and, if so, whether she could set aside her previously expressed opinion and decide the case on the evidence alone. In addition, he should have determined whether the unidentified male who responded to Ward's comment was a member of the jury, and if so, conducted a similar examination of that juror. Then, the court should have specifically and emphatically instructed the jury that any expressed opinion that the appellant was guilty because of his physical appearance was highly improper and must be disregarded. Finally, the court should have polled each member of the jury to determine whether anyone heard the remarks by Ward or the other veniremember, was influenced by those remarks, and would be able to disregard them.
We hold that, in the absence of any inquiry into the foregoing matters, the trial court abused its discretion in denying appellant's motion for mistrial and erred in denying his motion for new trial without a hearing. This cause must be reversed on the basis of veniremember misconduct. Therefore, it is unnecessary to address the seven remaining issues raised by the appellant Holland. However, we do note that several of those issues which were preserved for appellate review, including that *Page 550 
concerning the ineffective assistance of trial counsel, appear to have substantial merit.
Because the misconduct of a veniremember might have unlawfully influenced the verdict of appellant's trial and the trial court took inadequate measures to investigate and discount this possibility, the judgment is reversed. This cause is remanded to the circuit court for further proceedings not inconsistent with this opinion. The Appellee's application is overruled.
 ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; MOTION DENIED; REVERSED AND REMANDED.
All Judges concur.
[1] Goodman v. State, 588 So.2d 550 (Ala.Cr.App. 1991).
[2] After the voir dire of the venire was completed, the trial court gave the venire "an hour and 15 minutes or hour and a half recess," and instructed the venire to return at 12:15. (R. 63). When the venire returned, a jury was struck and administered the oath. After the lunch recess, the trial court stated: "Before we bring the jurors in, let's take up a couple of pretrial matters. The first thing is Mr. Callaham [defense counsel for appellant Holland] made me aware of a situationprior to lunch, and he wanted to make me aware of it." (Emphasis added) (R. 75). Defense counsel then related the incident summarized in the body of this opinion. Thus, it appears that the improper comments were made by members of the venire before the jury had been selected.