A.D. Sistrunk, the appellant, was convicted of the unlawful distribution of cocaine, was fined $5,000, was ordered to pay $100 to the Victims' Compensation Fund, and was sentenced to 20 years' imprisonment. He raises four issues on this appeal of that conviction.
 I.
The appellant argues that he was entitled to a mistrial because the prosecutor introduced inadmissible character evidence that the appellant was "a known drug dealer."
The State introduced evidence that on January 5, 1990, the appellant sold cocaine to an undercover narcotics agent of the Dothan Police Department. The trial began on May 8, 1991. Both the undercover agent and his partner, Officer Gary Coleman, testified to the events surrounding the sale and the appellant's arrest. On cross-examination of Officer Coleman, defense counsel repeatedly inquired into whether it was hard or easy for Coleman to remember this particular case.
The record reflects the following, beginning with defense counsel's last question to Officer Coleman on cross-examination:
 "Q. [defense counsel]: So this is easy to remember about, isn't it?
"A. With Mr. A.D. Sistrunk it is, yes sir.
 "Q. There you go. On this case right here, right here today, this is an easy case because it's in front of these twelve ladies and gentlemen.
"MR. BRANTLEY [DEFENSE COUNSEL]: Thank you.
"FURTHER DIRECT EXAMINATION
 "Q. [assistant district attorney]: All right. Let me ask you some questions about that, now. Mr. Brantley talked about it being easy. Why is it easy to remember this case about Mr. A.D. Sistruck?
"A. Because he is a known drug dealer. *Page 646 
 "MR. BRANTLEY: Move for a mistrial. The D.A. set him up, and he knew it was coming.
 "MR. MAXWELL [assistant district attorney]: I set him up? You —
"MR. BRANTLEY: Move for a mistrial, Judge.
"THE COURT: I'm going to deny your motion.
 "MR. BRANTLEY: Would you instruct the jury to disregard that statement?
"MR. MAXWELL: Judge, I don't —
 "THE COURT: No, I'm not going to give any instructions.
"MR. MAXWELL: Thank you.
 "Q. Because he is a known drug dealer; is that correct?
"A. Yes, sir." R. 69-70.
The State's next witness was Dothan police officer Antonio Gonzalez. On cross-examination, defense counsel elicited Gonzalez's testimony that an "unknown drug dealer . . . would be somebody that has sold drugs but we didn't have identification of them yet" (R. 80-81), and that a "known drug dealer" is someone the police know has sold drugs, as well as someone who has been convicted of selling drugs. R. 81. Then the following occurred:
 "Q. If a man or a person has been convicted of selling drugs before, would you call him an unknown drug dealer or a known drug dealer?
"A. I would call him a known drug dealer.
 "Q. Okay. But, yet, A.D. Sistrunk has never been convicted of selling drugs before; isn't that right?
 "A. He has never been caught or convicted, no, sir.
"Q. He has never been convicted, has he?
"A. No, sir." R. 82
On redirect examination of Officer Gonzalez, the prosecutor elicited, without objection, the officer's testimony that the appellant was a known drug dealer. R. 90.
The portions of the record cited above contain the entire objection advanced by defense counsel — a request for a mistrial without a statement of any grounds and a request for curative instructions. However, after the State had rested its case-in-chief and the trial court had denied the appellant's motion for a judgment of acquittal, defense counsel made the following request.
 "MR. BRANTLEY: Judge, I would again respectfully request an instruction to the jury when you give your oral charge to the jury to disregard testimony from police officers that A.D. Sistrunk is a, quote, known drug dealer, or in the alternative, to — if they are free to decide for themselves whether A.D. Sistrunk was or is a, quote, known drug dealer. Just because a police officer says he is a known drug dealer does not make it so. I think that coming from the mouth of a police officer that an accused is a known drug dealer, there is just something concrete about that, Judge. It prejudices the fair trial aspect of Mr. Sistrunk without a curative instruction from you.
 "THE COURT: I expect to charge the jury that they are the sole judges of the evidence in this case and they can give such credibility to any of the witnesses as they deem fit. I'm not going to make any specific charge. I do not intend to give any specific charge with regard to the testimony of the defendant being a known drug dealer. However, you can argue what you see fit from that question in your final argument, and, of course, you have your right of appeal in that matter. . . .
 "MR. BRANTLEY: Judge, I again renew my motion in the form of a motion for you to reconsider my motion for a mistrial based on Officer Gonzalez testifying to the jury that A.D. Sistrunk was a, quote, known drug dealer.
 "THE COURT: All right. I again deny your renewed motion for a mistrial on that basis." R. 111-13.
On appeal, the State argues that defense counsel is precluded from asserting error in this regard because it was defense counsel who "opened the door to the matter." Appellee's brief at 11. We agree and hold that where defense counsel attempts to impeach a prosecution witness *Page 647 
on cross-examination by repeated inquiry into whether the witness can remember the events about which he is testifying, the prosecution is entitled, on redirect examination, to elicit the witness's testimony as to why he can remember the events in question.
The purpose of redirect examination is "to answer any matters brought out on the cross-examination of the witness by [the] adversary." C. Gamble, McElroy's Alabama Evidence § 440.01(1) (4th ed. 1991). " 'A party who has brought out evidence on a certain subject has no valid complaint as to the trial court's action in allowing his opponent or adversary to introduce evidence on the same subject.' " Hubbard v. State,471 So.2d 497, 499 (Ala.Cr.App. 1984) (quoting Brown v. State,392 So.2d 1248, 1260 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1266
(Ala. 1981). See Dulaney v. Burns, 218 Ala. 493, 496, 119 So. 21
(1928), overruled on other grounds, Whitten v. Allstate Ins.Co., 447 So.2d 655, 659 (Ala. 1984). "Whenever defense counsel injects an issue into a case during cross-examination, the State may, within the discretion of the trial judge, question the witness as to that matter." Austin v. State, 434 So.2d 289,292 (Ala.Cr.App. 1983). See also Garrett v. State, 580 So.2d 58,60 (Ala.Cr.App. 1991). These rules apply even where the testimony on redirect examination concerns other criminal conduct by the defendant. Johnson v. State, 512 So.2d 819, 823
(Ala.Cr.App. 1987); Campbell v. State, 508 So.2d 1186, 1189
(Ala.Cr.App. 1986).
The trial court did not err by failing to give curative instructions after the first "known drug dealer" comment because defense counsel did not specify what type of instructions were being requested. Defense counsel was not entitled to an instruction charging the jury to totally disregard Officer Coleman's testimony that the appellant was a "known drug dealer." This comment was admissible for one purpose. During cross-examination defense counsel had called into question the officer's ability to remember the transaction with the appellant. Consequently, the comment in question was admissible to rebut the inference raised by defense counsel that the officer either had no independent recollection of the transaction or was "manufacturing" testimony for the benefit of the jury.
However, the comment was not admissible to prove that the appellant was, in fact, a known drug dealer. Had defense counsel requested the trial court to instruct the jury to disregard the comment for that purpose, the request should have been granted.
 "If an item of evidence is admissible for one purpose, it will be received in evidence despite the fact that there exists some other purpose for which it is not admissible. When the party against whom such evidence has been admitted conceives that the jury may consider the evidence for the improper purpose, his remedy is to request the court to instruct the jury that the evidence is to be considered only for the admissible purpose."
C. Gamble, McElroy's Alabama Evidence § 12.01 (4th ed. 1991) (footnotes omitted). "It is not for the court to separate the admissible from the inadmissible. The objection should separate the good from the bad." Pickett v. State, 456 So.2d 330, 334
(Ala.Cr.App. 1982) (citations to authority omitted).
 II.
The appellant argues that reversible error was committed when the trial court denied his motion for a mistrial, or in the alternative, his motion to individually question an allegedly tainted member of the venire.
After the close of the State's case-in-chief, defense counsel requested a mistrial based on the information he had just obtained that Deputy Sheriff Tim Green had told several jurors that the appellant "is a threat to society and he's a drug dealer, the biggest drug dealer in Dothan, and that they need to convict him." R. 114. At that time, this issue was fully explored in an evidentiary hearing. Pamela Stewart, the appellant's girlfriend, testified that she heard Deputy Sheriff Tim Green making *Page 648 
extremely prejudicial statements about the appellant to three members of the jury venire in the hall of the courthouse before the jury was selected.
Bailiff Travis Dansby testified to the effect that the veniremembers were in the courtroom and not in the hall when this event allegedly occurred. The trial judge then asked the members of the jury, "Has any juror, either before this trial began or since this trial has begun, been approached by any law enforcement officer or by anyone else, or has any juror overheard in the hallways next to the courtroom any disparaging remarks regarding A.D. Sistruck, the defendant in this case?" R. 134-35. Each juror individually responded that he or she had not. The jury was then excused for lunch.
Ms. Stewart was recalled and testified that she recognized one female juror as one of the three veniremembers to whom she observed Deputy Green talking. The trial judge refused to permit defense counsel to question this juror individually, apparently because the trial judge had already questioned her. Deputy Green testified and denied the statements attributed to him by Ms. Stewart.
At the close of the evidentiary hearing, the trial judge found "that there has been no taint to this jury" and "resolved the factual disputes in regard and support of [the defendant's] motion against [the defendant] and in favor of the State." R. 152.
 "This court in Woods v. State, Ala.Cr.App., 367 So.2d 974, 980, reversed on other grounds, Ala., 367 So.2d 982 (1978), stated:
 " '[T]he granting of a mistrial in cases of private communications between jurors and third persons is largely within the discretion of the trial judge, and his decision is subject to reversal only where that discretion has been abused. . . .
". . . .
 "In the absence of any showing to the contrary, we must assume that the trial judge was satisfied as to the nature of the conversation which passed between the witness and the juror, and upon this basis decided that the appellant was not prejudiced thereby. Whether there has been a communication with a juror and whether it has caused prejudice are questions of fact to be determined by the trial court in the exercise of sound discretion. Gaffney v. State, Ala.Cr.App., 342 So.2d 403, [1976], cert. denied, Ala., 342 So.2d 404 (197[7]). This ruling will not be disturbed in the absence of a showing of abuse of discretion."
Cox v. State, 394 So.2d 103, 105-06 (Ala.Cr.App. 1981).
In Holland v. State, 588 So.2d 543 (Ala.Cr.App. 1991), a case involving alleged juror contamination, this court reversed because the trial court undertook no inquiry into the circumstances of the alleged improper communication. We observed that
 "[a] motion for mistrial 'is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion.' Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala. 1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300
(1986). In cases involving juror misconduct, a trial court generally will not be held to have abused its discretion 'where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of the appellant were not prejudiced by the remark.' Bascom v. State, 344 So.2d 218, 222
(Ala.Cr.App. 1977). However, the trial judge has a duty to conduct a 'reasonable investigation of irregularities claimed to have been committed' before he concludes that the rights of the accused have not been compromised. Phillips v. State, 462 So.2d 981, 990 (Ala.Cr.App. 1984)."
Holland, 588 So.2d at 546. What constitutes a "reasonable investigation of irregularities claimed to have been committed" will necessarily differ in each case. A significant part of the discretion enjoyed by the trial court in this area lies in determining the scope of the investigation that should be conducted. *Page 649 
 "Th[e] discretion of the trial court to grant a mistrial includes the discretion to determine the extent and type of investigation requisite to a ruling on the motion. United States v. Flynn, 216 F.2d 354, 372 (2d Cir. 1954) [, cert. denied, 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1955)]; Lewis v. United States, 295 F. 441 (1st Cir. 1924) [, cert. denied, 265 U.S. 594, 44 S.Ct. 636, 68 L.Ed. 1197 (1924)]; Tillman, [v. United States, 406 F.2d 930 (5th Cir.), vacated on other grounds, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969)]; Killilea v. United States, 287 F.2d 212 (1st Cir. 1961) [, cert. denied, 366 U.S. 969, 81 S.Ct. 1933, 6 L.Ed.2d 1259 (1961)]; United States v. Khoury, 539 F.2d 441 (5th Cir. 1976) [, cert. denied, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752
(1977)]. A full evidentiary hearing at which witnesses and jurors can be examined and cross examined is not required. Tillman, supra, 406 F.2d [at] 938. The trial judge need not examine the juror to determine if that juror admits to being prejudiced before granting a mistrial.
Woods v. State, 367 So.2d 974, 980 (Ala.Cr.App.), reversed on other grounds, 367 So.2d 982 (Ala. 1978), partially quoted inCox v. State, 394 So.2d 103, 105 (Ala.Cr.App. 1981). As long as the court makes an inquiry that is reasonable under the circumstances, an appellate court should not reverse simply because it might have conducted a different or a more extensive inquiry. Generally, where the judge polls the jury and each juror indicates that there has been no improper communication, that is sufficient. See Ham v. State, 540 So.2d 805, 810
(Ala.Cr.App. 1988); Ex parte Weeks, 456 So.2d 404, 407
(Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051,85 L.Ed.2d 324 (1985). There is no absolute requirement that a juror alleged to have received an improper communication be examined apart from the other jurors. See Smith v. State,432 So.2d 550 (Ala.Cr.App. 1983), and Hopkins v. State,429 So.2d 1146, 1152 (Ala.Cr.App. 1983) (wherein the jury was questioned together as a group).
"[W]hen the trial judge acts promptly to investigate the circumstances surrounding the making of an inherently prejudicial remark [to] a veniremember, determining specifically whether the remark was made and whether the remark had a prejudicial effect on those who, ultimately selected to serve as jurors, heard it, there is no error in the denial of a motion for mistrial based on jury contamination." Holland v.State, 588 So.2d at 548. Here, by polling the jury and by questioning Deputy Green, the court acted promptly to investigate Ms. Stewart's allegations. Based on the results of those two inquiries, the court's finding that no improper communication occurred was not an abuse of discretion, notwithstanding the fact that the court declined to question one female juror individually.
 III.
The appellant contends that the prosecution failed to establish a proper chain of custody for the cocaine. The alleged break in the chain of custody occurred after the cocaine had been delivered to the forensic laboratory.
Police officer Tommy Merritt delivered the cocaine to David Thorne at the forensic laboratory in Enterprise, Alabama, on February 2, 1990. Thorne testified that he received the substance from Officer Merritt, examined it, and found it to contain cocaine. Police officer Antonio Gonzalez picked up the cocaine, which was in a sealed envelope, from the laboratory on February 21, 1990, and delivered it to Sergeant Jim Smith to be locked in the evidence vault. Smith was in charge of the evidence vault in which all narcotics were kept. The day the appellant's trial started, Officer Steve Parrish retrieved the still-sealed envelope from Smith, who removed it from the evidence vault. Parrish then brought the envelope to the trial.
The appellant alleges that the chain of custody is incomplete because of the lack of information concerning the custody of the cocaine during the 19 days it was in the laboratory and because Sergeant Smith did not testify.
This issue is controlled by the recent case of Ex parteHolton, 590 So.2d 918 (Ala. 1991). *Page 650 
 "This opinion sets forth an analysis to be followed in deciding whether a proper chain of custody has been shown. We have held that the State must establish a chain of custody without breaks in order to lay a sufficient predicate for admission of evidence. Ex parte Williams, 548 So.2d 518, 520 (Ala. 1989). Proof of this unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to assure the authenticity of the item. Id. In order to establish a proper chain, the State must show to a 'reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.' McCray v. State, 548 So.2d 573, 576
(Ala.Crim.App. 1988). Because the proponent of the item of demonstrative evidence has the burden of showing this reasonable probability, we require that the proof be shown on the record with regard to the various elements discussed below.
 "The chain of custody is composed of 'links.' A 'link' is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973).
 "If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a 'missing' link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the 'link,' as to one or more criteria or as to one or more links, the result is a 'weak' link. When the link is 'weak,' a question of credibility and weight is presented, not one of admissibility."
590 So.2d at 919-920. We find that the prosecution adequately satisfied the principles of Holton and proved a sufficient chain of custody in this case. The State proved to a reasonable probability that there had been no tampering with the evidence.Ex parte Williams, 548 So.2d 518, 520 (Ala. 1989). In addition, we note that, before questioning the chain of custody, defense counsel stated: "I'll stipulate that — if he [Thorne] says that's cocaine, I'll stipulate that it's cocaine." R. 94.
 IV.
The evidence presented by the State is sufficient to support the appellant's conviction. The prosecution presented a prima facie case. The undercover law enforcement agent who purchased the cocaine identified the appellant as the seller.
The fact that the appellant "had a white mark on his lips" (R. 47) did not render the identification of the appellant in a photographic lineup unreliable.
 "The fact that one suspect has a distinctive appearance is not the fault of the police. If, for example, a man with no ears committed a crime, the police would not be required to find others with no ears in order to conduct a lineup. The array may be 'necessarily suggestive,' but still not be 'unnecessarily suggestive' as is condemned in Carver v. [Alabama], 537 F.2d 1333, 1336 (5th Cir. 1976), cert. denied, 430 U.S. 910, 97 S.Ct. 1183, 51 L.Ed.2d 587 (1977)."
Blackmon v. State, 487 So.2d 1022, 1025 (Ala.Cr.App. 1986). This case presents no likelihood of mistaken identification.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 651